UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

HOWARD THALER.

        Petitioner,                                      08 CV 0110 (CLB)

    v.

UNITED STATES OF AMERICA,

        Respondent.

-------------------------------------------------------------x
_____

SUPPLEMENTAL REPLY IN SUPPORT OF PETITIONER'S PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

_____


*Inga L. Parsons*
5 Bessom Street, No. 234
Marblehead, MA  01945
Tel: 781-581-2262
Fax: 781-842-1430

Attorney for **Howard Thaler**


To:    Michael J. Garcia
        United States Attorney
        By: *Elliott B. Jacobson*, AUSA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

HOWARD THALER.

        Petitioner,                    08 CV 0110 (CLB)

   v.

UNITED STATES OF AMERICA,

        Respondent.

------------------------------------------------------------x
_____

SUPPLEMENTAL REPLY IN SUPPORT OF PETITIONER'S PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255
_____

COMES NOW, Petitioner, Howard Thaler, through his Counsel, Inga L. Parsons, and hereby submits his Supplemental Reply in Support of Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, as follows:

**I.**

**PRELIMINARY STATEMENT**

At the outset, it should be emphasized that Petitioner's trial counsel was a very good lawyer and undoubtedly is a very good judge. However, even very good lawyers can make material mistakes that result in prejudice to a defendant even when done unintentionally, inadvertently or mistakenly. This is perhaps especially understandable in cases where a client is an attorney and assumptions as to the knowledge and resources of a client can be overestimated. It is also apt to happen in cases where a client is perceived

2

as very demanding which can become a negative factor impacting an otherwise very good lawyer's judgment and decisionmaking as a result of an understandable frustration. Finally, as also happened in this case, trial counsel was in the process of becoming a judge, which further suggests a distraction accounting for counseling which otherwise might have been done but was overlooked in an anxious professional period. Nevertheless, even clients who are lawyers (in this case a real estate lawyer) or who are perceived as "high maintenance" or are represented during stressful moments require effective assistance of counsel particularly in criminal cases where there is so much on the line.

## II.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

A criminal defendant must satisfy a two-prong test in order to show ineffective assistance of counsel: (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *See Strickland,* 466 U.S. at 688-90, 694, 104 S.Ct. 2052; *see also United States v. Vegas,* 27 F.3d 773, 777 (2d Cir.1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

Had Petitioner been informed of and adequately counseled regarding the plea offer he would have accepted it. Petitioner was not advised of his potential sentencing guidelines under the plea agreement and the difference between those plea guidelines and

3

the plea guidelines after the trial including the additional conduct that was not being charged at that time of the initial plea offer. As a result, his rejection of the offer was not made with the effective assistance of counsel.

A failure to communicate a plea offer constitutes a performance below reasonable professional standards. S*ee, e.g., Hoffman v. Herbert*, 176 Fed.Appx. 166 (2d Cir. 2006) (Summary Order) ("[f]ailure of Petitioner's counsel to communicate the state's offer to petitioner plainly constituted performance below reasonable professional standards"). If a failure to communicate a plea offer constitutes a performance below reasonable professional standards, a failure to communicate the essential aspects of that plea offer to make a decision meaningful must also constitute a performance below reasonable professional standards. Put another way, if the offer that is related fails to include essential aspects of the offer, it is no better than if no offer had been related in terms of the defendant's knowing consideration.

As a threshold matter, a defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings which has been held to include plea negotiations. *See United States v. Gordon*, 156 F.3d 376, 379-80 (2d Cir. 1998) (citing *United States v. Day,* 969 F.2d 39, 44 (3d Cir.1992) (holding that § 2255 could provide relief where trial counsel was ineffective by giving defendant substandard advice about his sentence exposure under the Sentencing Guidelines during plea negotiations), *Toro v. Fairman,* 940 F.2d 1065, 1067 (7th Cir.1991); *Beckham v. Wainwright,* 639 F.2d 262, 267 (5th Cir.1981); *see also Boria v. Keane,* 99 F.3d 492, 496-97 (2d Cir.1996) (holding that ineffective assistance of counsel during plea negotiations justified § 2254 habeas relief).

The Second Circuit has made clear that, "[t]he decision whether to plead guilty or

4

contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.'" *Boria,* 99 F.3d at 496-97 (quoting Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* (1988)). We are a criminal justice nation of guilty pleas. Over 95 percent of all federal cases proceed by guilty plea rather than trial. *See* United States Sentencing Commission 2007 Annual Report at 28. The federal rules are very specific as to the need for an informed plea. *See, e.g.,* Rule 11, Fed.R.Crim.P. In this case, Petitioner was denied the specific knowledge necessary to determine whether to take the plea offer including the comparative sentence and the fact that this would be the end of plea negotiations. As a result, Petitioner rejected an offer he otherwise would have accepted.

As the Circuit has reasoned, it follows that "[k]nowledge of the *comparative sentence exposure* between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day, supra*, 969 F.2d at 43 (emphasis added). In this case, Petitioner did not have the comparative sentence exposure or the full plea consequences in order to assess the advisability of pleading guilty pursuant to the initial plea offer.

Specifically, Petitioner's guideline range at the initial plea offer was 18 to 24 months. *See* Govt's Sur-Reply at 3. Petitioner's sentencing range after trial was 97 to 121 months. *See* Govt. Response at 8. This comparative sentencing was not discussed with the Petitioner before he decided to reject the initial plea offer and eventually proceed to trial.

In his initial affidavit, Judge Kase described how he had relayed the plea offer

5

verbatim as offered by the government. Indeed, the affidavit of both government and counsel are eerily identical with the exception of the final factor f) that "the Government would not engage in any plea negotiations once such an indictment was brought" which Judge Kase could not affirm that he actually stated. Importantly, the verbatim offer of the government did *not* include a guidelines calculations. As a result, only in an additional affidavit in the sur-reply does Judge Kase actually address the issue of the guidelines and even then could only advise the court that he has no specific recollection of discussing the guidelines but claims that it is his "invariable" practice to go over the possible sentence parameters. This is the type of language that is used apparently mechanically by attorneys through affidavits prepared by the government as set forth in the cases relied on by the government. *See, e.g., Chang v. United States*, 250 F.3d 79, 84-86 (2d Cir. 2001).

But the critical issue in this case is not whether the plea was discussed at all, but what was actually discussed so as to determine if what was said was sufficient including the comparative guidelines. Indeed, these affidavits submitted beg important questions: What guideline calculations did counsel use? Did counsel discuss the possibility of downward departures? What was the comparative conduct before and after the plea that the government was willing to forego with the initial offer? What was said about the fact that there would be no future plea bargaining?

In sum, there is no factual record before this Court as to what the sentencing exposure entailed that the attorney's habit was to discuss with his clients. The general affidavit of the attorney does nothing to expound on this critical issue where *the guidelines themselves are absent from the plea agreement.* The initial plea agreement

6

required counsel to actually do his own calculation and not just parrot the government. This calculation would have shown that Petitioner faced 97 to 120 months after trial as opposed to 18 to 24 months with the initial plea; an increase in sentencing exposure of nearly six fold.[1] Petitioner was plainly unaware of this differential as obvious from his actions and statements. As a result, the generalities and boiler plate mechanical language of counsel with no specific recollection is insufficient in a case where there can be no confidence that Petitioner was aware of the enormous disparity in the comparative sentences.

The government maintains that because Petitioner said he did not want to go to jail he necessarily would not have taken the plea. The government's acknowledgement that Defendant advised that he did not want to go to jail actually proves Petitioner's point. If Petitioner was unaware of his exposure after trial and the inability to proceed with additional plea offers if he turned down the initial offer, it makes more sense that his response would be he did not want to go to jail—evidencing an ignorance of his risk after trial. In other words, it is evident that Petitioner did not comprehend that there was any risk of jail after trial which would have been clearly evident had he been informed of his plea guidelines after conviction at trial as his guideline range was an astounding *97 to 121 months.*

Petitioner's response is a much different response than the defendant who makes a calculated risk, as the defendant did in *Gordon*, *supra*, who decided that 84 months plea versus 120 months at trial was worth the risk. *Gordon*, 156 F.3d at 378. There is

---

[1] Furthermore, as this Court may recall, after conviction, this Court reduced the Petitioner's sentence from the 97 minimum to 84 months, a reduction of 13 months. A similar reduction with the plea guidelines on the initial offer would have resulted in a sentence of 5 months—which would have entitled the Petitioner to a non-jail, probatory sentence.

7

absolutely nothing in the record that Petitioner's attorney provided him with the accurate information comparing a range of 18 to 24 months (which is far closer through a downward departure to a non-jail sentence) versus 97 to 121 months after trial; a maximum exposure of over *ten years*.

However, had Petitioner been advised of the sentencing range after a conviction at trial and the inadvisability of such a risk he would have taken such a plea. Petitioner clearly had no idea of the differences in sentencing exposure. This is supported by Petitioner's actions and statements but also by the lack of guidelines in the actual plea offer, the lack of any "Pimentel" letter or request of any by counsel,[2] and the lack of any specificity in counsel's affidavit as to this enormous disparity.

Rather than consider that the absence of such factors explains much about how this case proceeded, the government attributes Petitioner's rejection of a plea offer to "stubbornness and obstinacy." However, when analyzing Petitioner's decision to reject the plea within the context and timing of the plea offers "stubbornness and obstinacy" must be replaced with "ignorance and misunderstanding." The critical issue in this case and which requires a finding of ineffective assistance is what happened when the first plea offer was made and not taken. In that case the guidelines would have been far lower than what Petitioner faced after a finding of guilt on trial and the difference in sentencing would have been six years. This disparity alone must call into question that these guidelines exposures were indeed accurately discussed and underscores that obstinacy

---

[2] Reference to a letter provided by the government outlining their estimation of the guideline to ensure that the defendant understands the plea guidelines as calculated by the government pursuant to the Second Circuit's suggestions in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991) ("Even if prosecutors are unwilling to engage in sentence bargaining, appeals involving claims of unfair surprise would be significantly reduced if the Government would at least inform defendants, prior to accepting plea agreements, as to the likely range of sentences that their pleas will authorize under the Guidelines.")

8

would have no place in the face of such risk.

Moreover, the government's charge of obstinacy is leveled at the time of the meeting with government's counsel and Petitioner's second attorney Jeffrey Hoffman *after rejection of the initial plea offe*r where the government advised of the strength of their case and the advisability of a plea (different than the one initially offered). The government had already included the additional conduct and counts including additional conduct, which greatly increased Petitioner's guidelines such that the second plea offer was not the same as the one ignorantly rejected.

Likewise, the government's claim that because the Defendant vigorously contested the government's proof at trial and in post-sentencing matters that this shows a "mind-set" of not wanting to plead. With all due respect, the government misunderstands the guilty plea mindset. Many defendants plead "not guilty" and go to trial who might otherwise plead guilty if the offer were worth it like the defendant in *Gordon* who went to trial and contested his guilt but who had ineffective assistance of counsel for not being accurately advised of the risks of trial. *Gordon*, 156 F.3d at 380-81. Specifically, the court in *Gordon* found ineffective assistance despite the fact that the defendant contested guilt which is what every defendant does who goes to trial. *See id.*

The question in this case, as it was in *Gordon*, is: what was the comparison that was presented to Petitioner *at the time of the plea offer*? Indeed, there was not even a formal plea offer in *Gordon*, yet the Second Circuit affirmed where the district court determined that it was irrelevant whether the government had made a formal plea offer because the defendant in Gordon was prejudiced "because *he did not have accurate information* upon which to make his decision to pursue further plea negotiations or go to

9

trial." *Id.* (emphasis added).  In this case, there can be no confidence that Petitioner had accurate information upon which to decide whether to plead guilty.

The government argued in *Gordon*, as the government argued in this case, that the defendant had been repeatedly advised that he faced a minimum sentence, and that "self-serving, post-conviction statements" was insufficient to meet the burden of proving the "reasonable probability" that he would have accepted the offer. *Gordon*, 156 F.3d at 380. Nevertheless, the Second Circuit upheld the district court's finding of ineffective assistance in *Gordon* as the defendant "relied on his counsel's erroneous advice regarding the risks of trial in formulating his decision to reject plea negotiations, maintain his innocence, and go to trial." *Id.*

With respect to the notion of self-serving post-convictions statements, no doubt any statement made by a defendant post-conviction can be called self-serving. Indeed, what point would there be in making the motion if the facts did not serve Petitioner's case. However, the Second Circuit makes clear that if there is "objective evidence" including "[t]he fact that there is a great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney provides a sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ." In other words, "a significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." *Pham v. United States,* 317 F.3d 178, 182 (2d. Cir. 2004). In *Gordon* for example, the difference in disparity was between 84 months and 210 months. *Gordon*, 156 F.3d at 380. In Petitioner's case the difference is a very similar 18 to 24 months versus 97 to 121 months. Indeed, the percentage

increase is *greater* in this case. As a result, the differential in exposure clearly shows prejudice and overcomes the derisive claim of "self-serving" statements.

Furthermore, as is usually the case, there were only two people present when the discussion of the plea agreement occurred. One of those persons, the attorney, has made clear that he has no particular recollections as to discussion regarding the actual sentencing parameters. *See* Kase Affidavit 2-29-08. Petitioner's actions in going to trial in this case because he did not want to go to jail are the words of a man who clearly has no clue that he risks 97 to 120 months in jail if he is convicted as opposed to 18 to 24 months with a certain plea offer.

Similarly, there is no credence to the government's odd suggestion that because the Petitioner sued the Grievance Committee years ago when they went after his law license that is proof of his intent not to plea guilty in this criminal matter. To the extent there is any conceivable connection, any such connection would undermines the government's position because the risk of 97 months or more in prison would be a far greater concern than a risk of a license. To the extent that was Petitioner's mindset it further makes clear that he was frightfully unaware of the consequences of a possible conviction after trial if he was equating the consequences with a loss of a professional license.

It is evident that not only was the comparative sentence missing in the plea discussion but also a discussion of how much was at risk and the inadvisability of not taking the plea. Both issues are of great concern to the Second Circuit. The case of *Boria*, *supra*, is illustrative. In *Boria*, the issue was not whether the plea was communicated to the defendant or even if it was appropriately, adequately or accurately

communicated to the defendant. The issue in *Boria*, where the Second Circuit found ineffective assistance, was the fact that counsel had deprived the client of the benefit of his expertise on whether the client should in fact accept the offer. *Boria*, 99 F.2d at 496-497. In *Boria*, the defendant was advised that refusal of the plea would result in the elimination of the possibility of a minimal sentence. *See id.* In this case, there is no evidence that Petitioner was advised that rejection of the initial offer would mean no further plea bargaining. In *Boria*, counsel thought rejection of the plea was "suicidal" but did not communicate this to Boria because he believed that the client would not admit guilt because of the embarrassment to his family. *See id.* at 497. As a result, the client was deprived of the counsel of his attorney and his wisdom and expertise on the advisability of accepting a plea. *Id*.

In this case, the facts are even more favorable to a finding of ineffective assistance because the full plea complete with sentencing differentiation and the preclusion of future negotiations was not discussed in any meaningful way, if at all. Any attorney worth his salt who had done the guideline calculation could not but strongly advise that it was "suicidal" to go forward to trial with the specter of up to 10 years in jail looming. Particularly if the case was as strong as the government contends it was.

The absence from Judge Kase's affidavit of any discussion of this comparative discrepancy and the need for strong counsel suggests that despite Judge Kase's invariable practice, at the time he handled this case it had varied, for any number of possible reasons including the background and temperament of his client and the posture of his professional transition. This is not to blame Judge Kase but to explain how his "invariable" practice cannot be depended on in the context of this case and the objective

12

evidence of the comparative sentence.

Finally, it can never be supposed in the context of a guilty plea that it could be "strategic" in not making a full, complete and accurate presentation to a defendant deciding one of the most, if not *the* most, important decisions affecting their case—whether to plead guilty. As a result, it is evident that there was ineffective assistance of counsel and that as a result, Petitioner did not accept a plea that he would had he been given complete and accurate disclosure of the actual sentencing exposure, the impact of refusing the agreement and the inadvisability of such a risk.

### III.

### PETITIONER SHOULD BE RESENTENCED UNDER THE PLEA AGREEMENT

The appropriate remedy in an ineffective assistance of counsel case "requires a remedy specifically tailored to the constitutional error. That remedy is one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error." *United States v. Carmichael*, 216 F.3d 224, 227 (2d. Cir. 2000) (internal citations omitted). In this case Petitioner should be sentenced under the initial plea agreement as the appropriate remedy. *See e.g., United States v. White*, 2007 WL 4386013(2d Cir. Dec. 11, 2007) (Summary Order) (upholding a lower court's decision to uphold the plea agreement as a result of counsel's failure to advise client of consequences of multiple convictions).

### IV.

### AT A MINIMUM A HEARING SHOULD BE HELD IN THIS MATTER

There is insufficient evidence with respect to the facts surrounding the colloquy regarding the guilty plea given the absence of such specificity in counsel's affidavit as set

forth in detail above.  Given this boiler plate language of the attorney's response and his evident lack of specific recollection or reference to any notes or details of the essential conversation regarding this issue, it is imperative that a full hearing be permitted in this matter including Petitioner's access to his counsel's notes and correspondence regarding the plea offer.  It is essential that the record be complete including the files and records related to this issue which are not before the Court.

Under 28 U.S.C. § 2255 , "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon*, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255  (emphasis added).   Here the files and records are lacking as the plea agreement does not specify the guideline range such that the statements and notes of counsel are crucial.  Counsel's affidavit without specific recollection and which fails to include the actual guidelines, necessitates under the principles of justice and fairness for an expansion of the record.  As a result, Petitioner respectfully requests a full hearing including counsel's documents and files regarding this issue.

### V.

### REQUEST FOR CERTIFICATE OF APPEALABILITY

Petitioner requests a Certificate of Appealability should this Court deny Petitioner's writ.  As set forth in detail above, Petitioner has shown that jurists of reason at a minimum would find it debatable whether the petition states a denial of a constitutional right of this most fundamental right of effective assistance of counsel and,

thus, if denied, this Court should enter a Certificate of Appealability.  *See Slack v. McDaniel, 529 U.S. 473, 484 (2000).*

WHEREFORE it is respectfully requested that this Court grant Petitioner's Writ of Habeas Corpus, hold a hearing in this matter as required, and, if denied, issue a Certificate of Appealability, and for such other and further relief as this Court deems just and necessary.

Dated:   Marblehead, Massachusetts
April 15, 2008

/s/_____
Inga L. Parsons (ip8889)
5 Bessom Street, No. 234
Marblehead, MA  01945
781-581-2262

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the 15th day of April, 2008, upon the following by notice of electronic filing and email:

**Elliott Bruce Jacobson**
U.S. Attorney's Office, White Plains
300 Quarropas Street
White Plains, NY 10601
9149931940
Fax: 9149931980
Email: elliott.jacobson@usdoj.gov

/s/_____
Inga L. Parsons

15