UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
HOWARD THALER,

                              Petitioner,

            - against -

UNITED STATES OF AMERICA,

                              Respondent.
-------------------------------------------------------x

Brieant, J.

S4 04 Cr. 1204 (CLB)
[08 Civ. 0110 (CLB)]

*Memorandum & Order*

        Before this Court for consideration is a Motion to Vacate, Set Aside or Correct his

criminal sentence, brought by Mr. Howard Thaler pursuant to 28 U.S.C. § 2255 and filed on

January 7, 2008.  Mr. Thaler was previously convicted after a jury trial on several counts of fraud

in connection with real estate transactions.  His conviction was affirmed on direct appeal (229

Fed. Appx. 7 (2d Cir. 2007)) and the Supreme Court of the United States denied *certiorari* on

November 5, 2007.  Familiarity on the part of the reader with the decision of the Court of

Appeals and the trial proceedings is assumed.  Mr. Thaler is presently serving his sentence and is

in Federal custody.


        By his motion originally filed *pro se*, Mr. Thaler, a disbarred lawyer, asserts the

talismanic claim of ineffective assistance of counsel, limited in this case to "failing to pursue

offered plea" (Motion at 12).


        Attachment A to the motion recites that initially Petitioner had hired the law firm of



-1-

Goodrich and Bender and that "all they talked about was cooperation. We never discussed what it would entail or what sentence could be imposed. Without such information, I felt uncomfortable with the firm and a month later hired John Kase, Esq. now [Acting Supreme Court Justice] Kase then of the well known criminal defense firm of Kase & Druker, Esqs."

Mr. Thaler then alleges as follows: I paid Kase & Druker a $25,000.00 retainer and met with John Kase twice. At no time did he discuss strategy, let alone a plea agreement. At about that time, I learned that the government was offering my co-defendant, William Fallow, a plea with a recommendation for six months house arrest. Fallow died of leukemia before the plea could be finalized.

Thereafter, the initial criminal Complaint was dismissed in the ordinary course of practice in this Court, and the case was brought before the Grand Jury, which in November 2004 returned an Indictment containing fourteen separate counts, compared to the one count (the Georgiana Sosa charge) contained in the original Complaint. Judge Kase having left the practice to commence a Judicial career, Petitioner retained the firm of Hoffman & Pollack. Mr. Hoffman, according to Thaler, told him that "because there was no negotiation in the interim period, and I forced the Government to obtain a new Indictment...that they were now taking a very hard line. All prior offers - none of which I had heard about - were no longer on the table."

The Petitioner alleges in his initial pleading that at this juncture, the Government offered a plea: "I would plead guilty to two counts but allocute to all fourteen counts. The counts to

which I would plead guilty had a Guidelines range of 24-36 months but there would be no

guarantee. The Judge could impose any sentence that he wanted and could consider all fourteen

counts in imposing sentence." Petitioner alleges that "Mr. Hoffman said that this was too risky,

and I was constrained to agree." Petitioner asserts that the opportunity to resolve the case was

lost when Attorney Kase failed to furnish Constitutionally adequate assistance and that his

sentence could have been as lenient as home confinement but certainly not in excess of 36

months.

Mr Thaler does not allege that he ever intended to plead guilty under any circumstances

or that he communicated any such intention to either of his counsel, or to the Government. The

*Sparman* Affidavit submitted by Judge Kase is found as Exhibit B to the Government's initial

response to the Petition. Judge Kase advises that in June of 2004, after he was nominated but

while he was in private practice, he was retained in connection with a one count criminal

complaint which charged Thaler with mail fraud in connection with the Georgiana Sosa home

mortgage loan. The client was aware of this nomination to the bench at the time that he was

retained.

He states in relevant part as follows: After being retained by the defendant, I engaged in

plea discussions with Assistant United States Attorney (AUSA) Elliott B. Jacobson. During the

course of these discussions, AUSA Jacobson informed me that: a) the FBI Special Agent

assigned to the case was aware of other fraud allegations relating to defendant (beyond the single

allegation in the Complaint) that had not been fully pursued or investigated; b) the defendant

would be permitted to waive Indictment and plead guilty to a one-count information charging

him only with the fraud alleged in the Complaint; c) if the defendant pleaded guilty to that charge

the government would recommend that he receive acceptance of responsibility points when his

Sentencing Guidelines was [sic] calculated; d) a loss amount for Sentencing Guidelines purposes

would be based on the conduct charged in the Complaint as the other allegations were not

'readily provable' at that juncture, and the investigation would cease; e) if the defendant did not

plead guilty on the terms set forth above, the government would dismiss the complaint without

prejudice, investigate the other allegations, and, if the evidence warranted, bring a multi-count

indictment against the defendant charging him with multiple instances of fraud.


Judge Kase goes on to state under oath that he communicated this offer to the Defendant

"in full what AUSA Jacobson had told him" and that Defendant told him that he was concerned

that by pleading guilty, there was a possibility at least that he might have to do some significant

jail time. This was a valid concern. In response, Judge Kase advises that he told the Defendant

that he was taking a "calculated risk by not pleading guilty, namely, that the Government could

indeed come back with an Indictment much broader than the Complaint, one that would expose

him to much greater potential penalties, and "Ultimately, the defendant told me that he did not

wish to accept the Government's plea offer and that he would not plead guilty."


Judge Kase communicated this information to AUSA Jacobson and the Government

thereafter proceeded as Mr. Jacobson had indicated. Judge Kase advises that "I have no

recollection of the Defendant's having asked me to pursue further plea discussions after the

Complaint was dismissed." After rejection of the plea offer, Judge Kase had no further

connection with the case. In early November, he withdrew from the case and was succeeded by

his former partner James L. Druker, Esq. who represented the Petitioner at his arraignment.

Thereafter, Attorney Jeffrey Hoffman was retained.

The Affidavit of AUSA Elliott B. Jacobson sworn to January 29, 2008 is essentially

consistent with that of Judge Kase.

The Court finds nothing inadequate in connection with the representation furnished by

Judge Kase or his advice in connection with the acceptance or rejection of the plea. Although

Thaler's experience as a lawyer was related primarily in connection with real estate transactions

and he was never an active practitioner at the criminal bar, he is a sophisticated and educated

professional, with at least some common sense understanding of the ways of the world. It was

certainly clear that a plea agreement might be to his advantage, that he would have difficulty

defeating all fourteen counts of the threatened superseding indictment and that should he be

found guilty, or plead, he would undoubtedly face some jail time. Indeed, the proposed plea

calling for a sentence to be fixed by the Court in its discretion having a view to the Guidelines as

applied to all counts, undoubtedly would have required a significant period of incarceration.

Judge Kase informed him adequately as to what might happen, and Mr. Thaler

does not dispute Kase's version of the facts.

In any event, the inadequate assistance, if such it were, did not constitute the proximate

cause of any damage or loss to Petitioner, because after the Indictment on November 10, 2004 and while Mr. Thaler was represented by Attorney Jeffrey Hoffman, the Government immediately after the first pretrial conference "invited (Attorney Hoffman) and the Defendant up to our offices and laid out our case in full to both of them." The prosecutors advised Defendant and his attorney that it was in his best interest to accept responsibility, plead guilty, and obtain credit for acceptance of responsibility under the Sentencing Guidelines for doing so, also that he would have to plead to at least two counts and allocute to all of the counts, and be sentenced within the Court's discretion, in accordance with the Guidelines as so computed.

As set forth in the Jacobson Affidavit "Hoffman subsequently advised me that the Defendant would not plead guilty. When I inquired of Hoffman why Defendant would not plead guilty in the face of overwhelming evidence of guilt, he replied in substance that his client did not want to go to jail.

This Court looks in vain for any sign of inadequate assistance of counsel in the factual context of this case. No criminal defense lawyer should attempt to overbear his client's judgment on the issue of whether or not to take a plea. Mr. Thaler knew what he had done. Mr. Thaler was and is a sophisticated and educated person and well understood when he rejected the plea offers what the possible outcome could turn out to be. Indeed, he was told in plain English by two different lawyers.

Furthermore, it is not valid to regard this case as totally indefensible. The frauds viewed

superficially, at least assisted persons of limited means including minorities in acquiring home ownership financing, from lending institutions. The average venireperson in this District does not weep for the condition of the mortgage lenders. Indeed, beguiling the lenders with half truths is common practice in the suburbs, where most people own their own homes. The defense was skillfully presented at trial, with strong overtones of the "Robin Hood" excuse, that a sympathetic disbarred lawyer was using his own money to clothe borrowers with the appearance of solvency to enable them to get mortgage financing from the selfish and/or wicked banks. The arcane elements of New York real estate financing are not readily grasped by many jurors, and only by hindsight can we conclude that Thaler's conviction was inevitable.

Mr. Thaler was sentenced to be incarcerated below the range of the applicable Guidelines. However, there is no basis to believe that, upon a plea he would have been entitled to a probationary or non-custodial sentence. This is so even if his exposure were limited to the Georgiana Sosa count.

The Petitioner showed no interest in entering a plea after the Indictment was filed or for that matter at any time. He sat through the trial openly laughing at the Government's case on more than one occasion. There is no causation relationship between his failure to plead guilty before trial or his failure to pursue plea negotiations, and any act or omission of the lawyer.

The Court cannot avoid an inference that Petitioner's present position is just a product of hindsight; and that he now wishes in light of intervening developments, that he had entered a

plea on at least two occasions when he faced a window of opportunity.  The purpose of post-verdict motions of this sort is not to facilitate decision making based on hindsight.  Both of the attorneys performed adequately under the circumstances and respected their client's ability to make a rational decision to reject the plea offer, which he did.  Nor can it be claimed that defending the case was a futile effort.  It was not and for the reasons indicated above, this jury, and no criminal jury for that matter, is under any compulsion to convict, even where guilt is overwhelming.

The Petition has no merit, and is denied.  The Court declines to issue a Certificate of Appealability because the issue is fact-intensive presenting no significant legal issue worthy of adjudication.

X

X

X

-8-

SO ORDERED.

Dated: White Plains, New York
          March 22, 2008

_____
Charles L. Brieant, U.S.D.J.